## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 08 2018, 6:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| James C. Spencer<br>Dattilo Law Office<br>Madison, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Angela N. Sanchez<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Thomas Downey,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 8, 2018<br><br>Court of Appeals Case No.<br>39A04-1709-CR-2167<br><br>Appeal from the Jefferson Superior Court<br><br>The Honorable Michael J. Hensley, Judge<br><br>Trial Court Cause Nos.<br>39D01-1608-F5-712, 39D01-1701-CM-4, 39D01-1704-CM-326 |

**Bradford, Judge.**

# Case Summary

[1] In August of 2016, Appellant-Defendant Thomas Downey was charged with a number of criminal offenses. On June 14, 2017, the trial court conducted a joint guilty plea and sentencing hearing.[1] During this hearing, Downey pled guilty to Level 5 felony criminal confinement, Level 6 felony battery against a public safety official, Class A misdemeanor battery resulting in bodily injury, Class A misdemeanor interference with reporting a crime, and Class A misdemeanor resisting law enforcement. The trial court accepted Downey's guilty plea and sentenced Downey to an aggregate three-year term with two years and three months executed and the remaining nine months suspended to probation. Recognizing that Downey's mental state likely contributed to his criminal behavior, the trial court recommended that the executed portion of Downey's sentence be served in the New Castle Correctional Facility so that Downey could receive mental health treatment during his term of incarceration. On appeal, Downey contends that his aggregate three-year sentence is inappropriate. We affirm.

---

[1] Three separate cause numbers were heard together during Downey's guilty plea and sentencing hearing. These cause numbers include 39D01-1608-F5-712 ("Cause No. F5-712"), 39D01-1701-CM-4 ("Cause No. CM-4"), and 39D01-1704-CM-326 ("Cause No. CM-326"). Downey's contentions on appeal relate only to Cause No. F5-712. Downey makes no argument regarding the facts supporting his guilty pleas to or the sentences imposed in either Cause No. CM-4 or Cause No. CM-326. As such, we will limit our discussion to those facts which relate to Cause No. F5-712.

# Facts and Procedural History[2]

Prior to the dates in question, Downey was diagnosed with schizophrenia. At the time of his arrest, Downey lived with his mother, Pamela Hicks. Hicks had experience dealing with schizophrenics given her long-term employment as a registered nurse at Madison State Hospital. Hicks testified that when taking the medication prescribed to treat his condition, Downey was "[n]inety percent good." Tr. Vol. II, p. 21. However, when not taking his medication "he's horrible, very delusional, thinks things are a certain way and they're not, just [does] all kinds of things that he should not be doing." Tr. Vol. II, p. 21. Over time, Hicks had become skilled at calming and controlling Downey's behavior when he suffered an episode related to his mental condition. However, in the year leading up to August of 2016, Downey had stopped taking his medication. As a result, he was no longer responsive to Hicks's efforts. Downey's mental condition was exacerbated by both his refusal to take his medication and his abuse of drugs and alcohol.

Downey had been drinking alcohol during the evening hours of August 4, 2016, and early morning hours of August 5, 2016. At approximately 1:30 a.m. on August 5, 2016, Hicks asked Downey to quiet down. When Downey refused,

---

[2] The factual basis provided to the trial court during the guilty plea hearing included only a basic factual overview and lacked the details necessary to provide context to the reader. Therefore, to the extent necessary, we will rely on Hicks's testimony during the sentencing phase of the June 14, 2017 joint guilty plea and sentencing hearing and information contained in the probable cause affidavit filed in the underlying case to provide context to the readers.

Hicks called 911. In an attempt to keep Hicks from calling 911, Downey grabbed her by the wrist and pushed her down onto a couch. Downey then confined her to the couch. As a result of Downey's actions, Hicks suffered pain, bruising, and swelling in her wrist.

[4] After arriving at Hicks's home and observing Downey, responding officers came to believe that Downey should be taken to the hospital for evaluation. Downey refused to go to the hospital, telling the responding officers that he "just wanted to stay at home and drink his beer." Appellant's App. Vol. II, p. 27. At some point, however, Downey attempted to leave the residence. As he did so, he approached a police officer who was standing in the doorway. In an attempt to get by the officer, Downey "grabbed [the officer's] right wrist" and pulled his arm. Tr. Vol. II, p. 11. Downey also scuffled with other officers as they attempted to restrain him. Eventually, Downey was placed under arrest.

[5] On August 5, 2016, Appellee-Plaintiff the State of Indiana ("the State") charged Downey under Cause No. F5-712 with Level 5 felony criminal confinement, Level 6 felony battery against a public safety official, Class A misdemeanor battery resulting in bodily injury, Class A misdemeanor interference with reporting a crime, and Class A misdemeanor resisting law enforcement.

Downey was subsequently released on bond while awaiting trial and was ordered to have no contact with Hicks.[3]

[6] Meanwhile, in Cause Nos. CM-4 and CM-326, the State had charged Downey with Class A misdemeanor invasion of privacy and Class B misdemeanor public intoxication. Downey subsequently indicated that he wished to plead guilty to all of the charges contained in Cause Nos. F5-712, CM-4, and CM-326. The trial court conducted a joint guilty plea and sentencing hearing on June 14, 2017. During this hearing, the trial court found the factual basis to be sufficient and accepted Downey's guilty pleas.

[7] During the sentencing phase of the hearing, Downey indicated that prior to sentencing, he had been placed at the New Castle Correctional Facility. While at the New Castle Correctional Facility, Downey received treatment for his mental health issues and became compliant with his medication. Downey further indicated during sentencing that he believed his placement at the New Castle Correction facility had "helped" him. Tr. Vol. II, p. 17. Also during the sentencing phase of the hearing, Hicks indicated that she believed Downey required treatment for his mental condition as well has his drug and alcohol abuse. She further indicated that Downey would no longer be welcome to live

_____

[3] The State subsequently filed a motion to revoke Downey's bail. It appears that this motion was granted as Downey was in custody as of the date of the joint guilty plea and sentencing hearing.

with her because while she loves her son "very much," she "just cannot deal with this anymore." Tr. Vol. II, p. 23.

[8] Following the hearing, the trial court issued an order in which it accepted Downey's guilty pleas and sentenced Downey. The trial court sentenced Downey to time served in both Cause No. CM-4 and CM-326. In Cause No. F5-712, the trial court sentenced Downey to an aggregate three-year term with two years and three months executed and the remaining nine months suspended to probation. In sentencing Downey, the trial court recommended that Downey "be placed at the New Castle Correctional Facility and receive mental health treatment during the term of his incarceration." Appellant's App. Vol. III, p. 16.

## Discussion and Decision[4]

[9] Downey contends that the three-year sentence imposed in Cause No. F5-712 is inappropriate in light of the nature of his offenses and his character. Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "'concentrate less on

---

[4] We note that while Downey introduces his contention on appeal as whether the trial court abused its discretion in sentencing him, his entire argument relates to whether his sentence is inappropriate. We will therefore consider Downey's challenge on appeal as an appropriateness challenge rather than an abuse of discretion challenge.

comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character.'" *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (quoting *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), *trans. denied*). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[10] With respect to the nature of Downey's offenses, the record reveals that Downey battered his own mother, causing injuries to her wrist. He also confined her to the couch in an attempt to stop her from calling 911. Once officers arrived at the residence, Downey grabbed one of the responding officers by the wrist and attempted to pull the officer away from his position by the door. Downey continued to demonstrate combative behavior by scuffling with several officers as they attempted to place him in restraints.

[11] As for his character, the record reveals that Downey has a criminal history which includes both felony and misdemeanor convictions. Downey's criminal history includes felony convictions for possession of a schedule I, II, III, or IV controlled substance; intimidation; and possession of two or more precursors for the manufacture of methamphetamine. It includes misdemeanor convictions for possession of marijuana, illegal possession of an alcoholic beverage, operating a vehicle while intoxicated, illegal consumption of an alcoholic beverage, and check deception.

[12]  The record also reveals that Downey is either unwilling or unable to follow both (1) the laws of this state and (2) rules and procedures aimed at rehabilitation. Downey was released on bond when he committed the charges filed under Cause Nos. CM-4 and CM-326. In addition, documents detailing Downey's criminal history reveal that while he has previously been placed on probation, he has, on numerous occasions, committed violations of the terms of his probation. Further, the Indiana Risk Assessment System–Static Tool indicates that Downey is "in the VERY HIGH risk category to reoffend." Appellant's App. Vol. IV–Confidential, p. 10.

[13]  Furthermore, to the extent that Downey argues that his sentence is inappropriate merely because he was ordered to serve an executed portion in the Department of Correction ("DOC") as opposed to Community Corrections, we disagree.

> The location where a sentence is to be served is an appropriate focus for application of our review and revise authority. *Biddinger v. State*, 868 N.E.2d 407, 414 (Ind. 2007). It is not, however, subject to review for abuse of discretion. *See id*. Nonetheless, we note that it will be quite difficult for a defendant to prevail on a claim that the placement of his sentence is inappropriate. *Fonner v. State*, 876 N.E.2d 340, 343 (Ind. Ct. App. 2007). This is because the question under Appellate Rule 7(B) is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. *Id*. at 344. A defendant challenging the placement of a sentence must convince us that the given placement is itself inappropriate. *Id*. As a practical matter, trial courts know the feasibility of alternative placements in particular counties or communities. *Id*. at 343. For example, a court is aware of the availability, costs,

and entrance requirements of community corrections placements in a specific locale. *Id*. at 343–44.

*King v. State*, 894 N.E.2d 265, 267–68 (Ind. Ct. App. 2008).

[14] In the instant matter, the trial court recognized that Downey's mental state likely contributed to his criminal behavior, finding his mental illness to be a mitigating factor during sentencing. Also, in ordering that two years and three months of Downey's three-year sentence be executed in DOC, the trial court recommended that Downey be placed at the New Castle Correctional Facility so that Downey could receive mental health treatment during his term of incarceration. Downey does not specify what treatment he requires that is not available through DOC. Further, the record reveals that Downey had been placed in the New Castle Correctional Facility while awaiting sentencing and that as of the date of sentencing, Downey was compliant with his medication and his mental state seemed to have stabilized.

[15] Again, Downey bears the burden of persuading us that his sentence is inappropriate. *Sanchez*, 891 N.E.2d at 176. Upon review, we conclude that Downey has failed to convince us that his three-year sentence is inappropriate in light of the nature of his offenses and his character. Downey has also failed to convince us that his placement in DOC is inappropriate. As such, we affirm the judgment of the trial court.

[16] The judgment of the trial court is affirmed.

Robb, J., and Crone, J., concur.